THOMAS W. RICKARDS, next friend of LORENZO CORDRY *vs.* ISAAC ADAMS, and UNICE his wife.

General devise considered a fee to effect the intent of the testator,

APPEAL from the orphans' court.

John Cordry, late of Sussex conty, dec'd. by his last will and testament, dated 17th July, 1816, divised and bequeathed as follows.

"As it respects what God has been pleased to bless me with in this life, I give, devise and dispose of in the following manner and form; viz: *Item*—I give and bequeath to my daughter Milly Adams, one shilling, and no more. *Item*—I give and bequeath to my son Spencer Cordry, one shilling, and to have no more of my estate. *Item*—I give and bequeath to my son John Cordry, twenty-five acres of land adjoining a tract which I have deeded to be laid off, begining at the county road opposite the lane that leads to my house, &c. and running, &c. until it intersects with the line of the afsd. tract of land, already deeded to him, shall include twenty-five acres of land, to him and his heirs forever. *Item*—I give and bequeath to my

"I take this to be a rule in pleading, that you cannot go to issue on a general allegation of performance.  "The conclusion was therefore held wrong." *2 Cowp.* 575; *Archb.* 187; *2 Saund.* 316 &c. 1 *Chitty* 417; *3 Saund. Rep.* 698; [361.] *Archb.* 102; 1 *Chitty* 324 *Step. Pl.* 252; *3 Burr.* 1725.

But supposing these pleas ought to have concluded with a verification, as we think they ought, upon a demurrer the court will look into the whole record, and give judgment against the party whose pleading was first defective in substance; 1 *Chitty* 662; if therefore the court were to consider this deed as a part of the record, and the clause of it which we have construed a condition precedent as at all before the court, we should undoubtedly resort to the declaration where the first slip occurs in the failure to set out this condition precedent, and to aver performance or that which would excuse the performance of it.   But for the reasons before assigned; judging of the record as we find it, the Plff. must have judgment on his demurrer.

After the opinion of the court was pronounced the deft.'s counsel moved for leave to plead over which the court refused.   The parties came to the argument of the demurrer with an avowal that the determination of the cause rested upon it; the argument involved a construction of the contract; the deft. has adhered to his pleading until after solemn argument and a whole vacation taken by the court to consider, the opinion of the court has beeen pronounced, and the judgment if not actually entered, at least ordered; the plff. has been delayed two terms by this proceeding; and the practice of allowing amendments at this stage of the proceedings if generally adopted, would produce endless delay.   The defence set up in this cause is not of a character to entitle it to peculiar consideration, being only evasive of the obligations imposed on deft. by his contract, and for which he has been *paid*; and he still has an opportunity for any just defence before the jury of inquiry.

Motion refused.

daughter Unice Adams, one shilling, and no more. *Item*—I give and bequeath to my son Isaac Cordry, one shilling, and to have no more of my estate. *Item*—I give and bequeath to my son William Cordry one feather bed, one cow and calf, and *one half part of the residue of my lands which I have not devised or deeded away.* *Item*—I give and bequeath to my son Elijah Cordry ten acres of land adjoining a tract which I have deeded to him to be laid off, &c. also one feather bed and one cow and calf. *Item*—I give and bequeath to my son James Cordry one half part of the residue of all my lands which I have not already disposed by will or deed; but if James should die without issue it is my will and desire that my son William should have hi spart to him and his heirs forever. *Item*—I give to my four youngest children, Sally, Betsy, Nelly and James Cordry, all the residue of my personal property which is not before named or given in this my last will, to them and their heirs forever."

And the said testator appointed Spenser and John Cordry his executors, who proved the will.

After the death of William Cordry, Isaac Adams and Unice his wife filed their petition in the Orphans' court for a division of the lands devised to him on the ground that he took but a life estate under the will afsd. and that the said John Cordry, the father, died intestate as to the reversion of said lands; and on the coming in of the return, a rule was granted at the instance of the next friend of Lorenzo H. Cordry, son and heir of the said William Cordry, to show cause why the return and proceedings should not be set aside. The Orphans' court, upon hearing, discharged this rule and affirmed the return "upon the ground that the said William Cordry took but a life estate under and by the said last will and testament of the said John Cordry; and thereupon the said Isaac Adams, in right of his wife the said Unice, and the other children and legal representatives of the said testator mentioned in said petition, were entitled to such part and share of the reversionary interest in said lands and premises as is mentioned and set forth in said petition." Whereupon an appeal was prayed and granted.

*Mr. Wootten.* The particular words of the devise being to William Cordry without any words of limitation superadded, would, I admit, carry but a life estate; but I contend that according to the manifest intention of the testator, William Cordry was to have a fee. He designed to dispose of *all* his estate; expressly cuts of some of his children with a shilling, and declares it to be his will that they shall have *no more of his estate.* A particular devise for life may be construed a fee to carry out a general intent: much more a general devise which is in itself restricted to a life estate only by implication. 8 *East*, 141; 1 *Wm. Blac.* 535; 3 *Dallas*, 477.

*Mr. Layton*, for appellee. It is apparent that the testator knew how to devise a fee and what was the effect of words of limitation; for he has devised estates in fee simple, fee tail and for life. The bequest of a shilling and no more meant no more of his *personal* estate. That form of expression is used in the bequests to his daughters; the sons had been provided for, and he adds to the bequests made them that they are to have *no more of his estate.* The peti-

tioners claim the land not under the will but under the intestate laws. It is very plain that the testator died intestate as to this reversion.

*Mr. Wootten* in reply, referred to the introductory clause as showing that the testator meant to give away *all* his estate.

*Mr. Justice Harrington* delivered the following as the opinion of the court; though *Judge Black* inclined the other way.

The devise to William Cordry being general and without any words of limitation, carries but a life estate unless a manifest intent is apparent from the other parts of the will, to give him a larger estate. The introductory clause, though important in a consideration of the whole will, is not of itself sufficient to enlarge the general devise, but may be taken in connexion with the other parts to show the meaning which the testator attached to his devise to William, and the extent to which he designed him to be benefitted by that devise. Independently of the introductory clause, it does appear from the will that the testator designed to part with his whole estate, and not to die intestate as to any part thereof; for he notices all his children even those to whom, having probably been already advanced by him to the extent of their equal share, he bequeathed a shilling and no more; recognizes certain conveyances by deed which he had already made of a part of his property—and, after some devises of land, he gives to William one half part of the residue of his lands, and to James one half part of the residue of all his lands which he had not already disposed of by will or deed. His personal property he in like manner parcels out; and in a very comprehensive residuary bequest, disposes of "all the residue of his personal property which is not before named or given in that his last will" to his four youngest children. It is impossible to suppose, from this view of the will, that the testator did not design to dispose of all his property, and he expressly declares his intention to do so in the introductory clause—"as it respects what God has been pleased to bless me with in this life, I give, devise and dispose of," &c.

It is not less apparant that the testator intended that his daughter Unice Adams, the present petitioner, should in no event have any thing more than the shilling he bequeathed her. It was said, however, in the argument that this was to be confined to the personal property; conceding that the testator had cut her off from any further participation in that. But if the bequest to Unice Adams could be thus restricted, which we think it cannot, the several bequests to Spenser and Isaac clearly cannot, for the expression there is that they *shall have no more of his estate,* which cannot by any stress be confined to the personality. And if it is manifest that the testator designed that Spenser and Isaac should in no event have any more of his estate, it is equally fatal to the ground taken by the petitioner's counsel, for it requires a fee in William to execute that intention. As in the case of *Bates and wife* vs. *Clayton, et al.* 8 *East* 141 where the testator bequeathed to N. Bates a shilling and *that he should not come upon his premises or hereditaments on any account whatsoever;* the court construed a subsequent general devise of land to Wright Thomas Bates to be a fee, because otherwise N. Bates might, on the determination of his life estate have a right to

come upon the premises against the manifest intention of the testator. So in this case, if the general devise to William Cordry be not construed to carry the fee, Spenser and Isaac Cordry, and also Milly and Unice Adams, would, on the expiration of his life estate be entitled to equal shares with the other children of the land so devised to William, against the manifest intent of the testator. We think it clearly appears from this will that the testator's design and object were to dispose of his whole property; to give his son William a fee in one half the residue of his lands not before disposed of; and to cut off his sons Spencer and Isaac, and his daughters Milly and Unice, with a shilling. The decision of the Orphans' court was, therefore, erroneous, and ought to be reversed; and the return made and proceedings had in the said court for a partition of the said land among the heirs at law of John Cordry ought to be set aside."

Decree reversed.

*Wootten,* for appellant.
*Layton,* for respondent.